UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | DOCKET NO. 18-10117-ADB |
| | ) | |
| BULMARO ENRIQUEZ | ) | |

RESPONSE TO GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION FOR RELEASE

The Bail Reform Act mandates the release of all persons facing trial unless *no* condition, or combination of conditions, will *reasonably* assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142. Mr. Enriquez's personal circumstances demonstrate that he would not be a flight risk under the strict conditions of release proposed to the Court at his hearing and the government has not argued that he presents a danger to the community. *See* D.E. 17. He respectfully requests that the Court release him on the requested conditions as soon as possible.

      I.      Undocumented Status is Not Presumptive Evidence of Flight Risk

The parties do not dispute that Mr. Enriquez does not have legal status in the United States.[1] However, neither this status nor the existence of an immigration detainer is presumptive evidence of a risk of flight. The Court must still weigh the factors outlined in § 3142(g) independently and with specific regard to Mr. Enriquez's personal circumstances. *See United States v. Trujillo-Alvarez*, 900

---

[1] As noted in Mr. Enriquez's prior filing, however, he does have an application for a U-Visa pending. According to immigration attorney Diana Rashid of the National Immigrant Justice Center, should Mr. Enriquez be released, he would be eligible to apply for deferred action on his removal and potentially receive permission to work on the basis of his U-Visa application. Contrary to the government's assertion in its brief, Mr. Enriquez already has a legal social security number which he received from INS as a child. He has used this number to work and file taxes.

1

F.Supp.2d 1167 (D. Oregon 2012); *see also United States v. Xulam*, 84 F.3d 442, 442–43 (D.C. Cir. 1996) (holding that a deportable alien was not a flight risk where conditions could be imposed to ensure return to Court). Where the executive branch has chosen to prioritize criminal prosecution over removal, it must abide by the laws governing such prosecutions, including the Bail Reform Act.

Congress did not intend for immigration detainers to be exceptions to the Bail Reform Act. *See, e.g., United States v. Adomako*, 150 F.Supp.2d 1302, 1304 (M.D. Fla. 2001) ("Congress chose not to exclude deportable aliens from consideration for release or detention in criminal proceedings"). Congress included one special provision for aliens in the BRA, but only for "[t]emporary detention [of up to ten days] to permit revocation of conditional release, deportation, or exclusion…." 18 U.S.C. § 3142(d). Failing that, "such person[s] shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings." *Id.*

Multiple courts have affirmed that the existence of an immigration detainer or pending immigration proceedings does not act as an automatic barrier to release on conditions. *See United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (concluding that the fact that defendant is alien "does not tip the balance either for or against detention"); *United States v. Chavez-Rivas*, 536 F.Supp.2d 962, 968 (E.D. Wis. 2008) (finding that illegal reentry defendant's "status as a deportable alien does not mandate detention"); *Trujillo-Alvarez* at 1176–78 (rejecting government's argument that an ICE detainer should be viewed as an exception to the BRA); *United States v. Sanchez-Martinez*, No. 13-CR-00236-JLK, 2013 WL 3662871, at *5 (D. Colo. July 12, 2013) ("the court cannot detain [the defendant] based solely on his immigration status or the ICE detainer"). Many courts have granted release with conditions to defendants facing deportation after balancing the

factors under 18 U.S.C. § 3142(g).  *See, e.g,*, *United States v. Mendez Hernandez,* 747 F.Supp. 846 (D. P.R. 1990) (ordering release of noncitizen defendant charged with illegal reentry where the evidence showed he was not a flight risk).  It is error for a court to rely solely on the existence of an ICE detainer or the probability that an alien may be detained or removed from the United States to find that no conditions could reasonably assure his appearance. *United States v. Santos-Flores,* 794 F.3d 1088, 1091 (9th Cir. 2015).

      II.      <u>The Speculative Risk of Transfer to Immigration Custody is Not a Ground for Detention</u>

As a matter of law, the argument that Mr. Enriquez could become unavailable for prosecution if transferred to ICE custody and deported cannot be considered as a factor favoring detention under 18 U.S.C. § 3142.  "[T]he risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition." *Santos-Flores,* 794 F.3d at 1091; *see also United States v. Marinez-Patino*, No. 11 CR 064, 2011 WL 902466, at *4 (N.D. Ill. Mar. 14, 2011) ("To show that there is a serious risk that a defendant will flee, the government must show that the defendant would seek to leave through some type of voluntary act").  An ICE detainer "is an externality not under [the] defendant's control. As such, it must be excluded from the detention analytic." *United States v. Barrera-Omana*, 638 F.Supp.2d 1108, 1110 (D. Minn. 2009).  A defendant cannot be considered to have "failed to appear" simply because another agency of the Government, such as ICE, prevents him from appearing by deporting him. *Id.* at 1111, *see also United States v. Castro-Inzunza*, No. 12-30205, 2012 WL 6622075 (9th Cir. 2012) (reversing the district court finding that "no conditions or combination of conditions will reasonably assure the [defendant's] appearance," because the government failed to show that it lacked the ability to stay or defer removal).

This speculative risk does not weigh against the availability of a defendant, even when a removal order has been issued. *See, e.g., United States v. Jocol-Alfaro*, 840 F.Supp. 1116 (N.D.

3

Iowa 2011) (ordering illegal alien charged with false claims of citizenship and false use of Social Security numbers to be released on conditions, despite detainer filed by ICE); *see also United States v. Villanueva-Martinez*, 707 F.Supp. 2d 855, 858 (N.D. Iowa 2010) (releasing the defendant with conditions, despite the existence of an ICE detainer, because "[t]he court will not speculate on the possible results of pending immigration proceedings involving the defendant"). To allow such abstract risks to be determinative would render the protections of the BRA illusory. *See United States v. Montoya-Vasquez,* No. 4:08CR3174, 2009 WL 103596, at *5 (D. Neb. Jan. 13, 2009) (noting that "[i]f the court could consider as determinative the speculative probabilities that a defendant would be removed from this country by ICE once he is placed in ICE custody, it would effectively mean that no aliens against whom ICE places detainers could ever be released on conditions. Such a harsh result is nowhere expressed or even implied in the Bail Reform Act. . . . If Congress wanted to bar aliens with immigration detainers from eligibility for release, it could readily have said so, but did not.").

In reality, the risk of untimely deportation is remote because the United States Attorney's Office has the power to ensure that Mr. Enriquez remains in the country while his case proceeds. Federal regulations provide for "departure control orders" that may be utilized when federal prosecutors wish to retain aliens within the United States for court hearings. *See* 8 C.F.R. § 215.1 *et seq.*; 22 C.F.R. § 46.1 *et seq*. The regulations specifically provide that an individual who is party to a criminal case pending in a United States court shall not be permitted to depart, except "with the consent of the appropriate prosecuting authority." 8 C.F.R. §§ 215.3(g), § 215.2(a). Under this authority, "the departure control officer [the ICE deportation officer] … shall temporarily prevent the departure of such alien from the United States and shall serve him with a written temporary order directing him not to depart, or attempt to depart, from the United States until notified of the

revocation of the order." 8 C.F.R. § 215.2(a). Removal by ICE could thus be prevented simply by the issuance of a departure control order. Thus, the two executive agencies charged with the investigation and prosecution of Mr. Enriquez have the ability to coordinate with each other to ensure that he is not improperly deported before the federal criminal case is completed. And in fact, those two agencies have already coordinated with one another in this matter: Mr. Enriquez was arrested by ICE agents, and they transported him to federal court to appear on this matter.

Even if the prosecution and ICE were not already cooperating in Mr. Enriquez's case, courts have noted that the purported conflict between the immigration court and the criminal court is one that the government is equipped to resolve.

> The problem here is not that defendant will absent himself from the jurisdiction, but that two Article II agencies will not coordinate their respective efforts. The Executive, in the person of the Attorney General, wishes to prosecute defendant. The same Executive, in the person of the Assistant Secretary of Homeland Security for ICE, may want to deport him. It is not appropriate for an Article III judge to resolve Executive Branch turf battles. The Constitution empowers this Court to apply the will of Congress upon a criminal defendant on a personal and individualized basis. This Court ought not run interference for the prosecuting arm of the government.

*Barrera-Omana*, 638 F.Supp. at 1111–12.

Therefore, unless and until the government forgoes its criminal prosecution against Mr. Enriquez, "administrative deportation proceedings must take a backseat to court proceedings until the criminal prosecution comes to an end." *United States v. Blas*, No. CRIM. 13-0178-WS-C, 2013 WL 5317228, at *3 (S.D. Ala. Sept. 20, 2013); s*ee also Trujillo-Alvarez* at 1180 (ordering that unless the prosecution abandoned the criminal prosecution of the defendant, it must release him from ICE custody on the pretrial conditions previously imposed by the Magistrate); *United States v. Hernandez-Bourdier*, No. CR 16-222-2, 2017 WL 56033, at *10–11 (W.D. Pa. Jan. 5, 2017) (adopting reasoning of *Blas* and *Trujillo-Alvarez* in ordering release of defendant in drug case, despite immigration detainer and presumption of detention under 18 U.S.C. § 3142(e)).

Since these two agencies have demonstrated not only the ability but a willingness to resolve this purported conflict, in releasing Mr. Enriquez to appear before this Court, there is no reason to believe that Mr. Enriquez will be removed and made unavailable for prosecution if released.

### III. Mr. Enriquez's Personal Circumstances Demonstrate That He is Not a Flight Risk.

Mr. Enriquez was brought to the United States from Mexico by his parents when he was two years old. Although without legal status, he is effectively a "DACA dreamer:" he was raised and educated in the United States, speaks fluent English, and effectively knows no other homeland. He lived in California until he was 23 years old, at which point he relocated to Massachusetts. He met his wife, a U.S. citizen, when they were 14 years old, in high school in California. Mr. Enriquez and his wife have now lived in Massachusetts for 10 years. They were proud to purchase a home in Framingham in 2015. They have three U.S. citizen children, ages 11, 5, and 2. Mr. Enriquez's eldest child is a student in the Framingham Public Schools and his two youngest children are in daycare in the area.

Mr. Enriquez's prior pre-sentence report reflects a relatively minor record which includes several charges incurred between the ages of 17 and 21: three charges of being under the influence of a controlled substance, one charge for possession of a controlled substance, and a charge for "escaping jail while charged with a misdemeanor" when he was 17. By his own account, he was addicted to methamphetamine during this time and running with a troubled crowd in California. He chose to leave California in his early 20's to leave this life behind, and he moved all the way to Massachusetts to do so. His only Massachusetts conviction is a conviction for possession of a class D substance when he was 29 years old.

Mr. Enriquez was deported nine times between 2004 and 2016. While the government posits that this renders him a flight risk, in fact the opposite is true. The sheer number of

deportations and obvious efforts he has made to return as quickly as possible to his family in the United States demonstrates the reverse: that he wants nothing more than to return to this country and live here, with his family. He is not someone who enters the country to live under other names and commit crimes; rather, he is someone who returns to the United States repeatedly, at great personal risk, to live in his family home, with his U.S. citizen children, and to support his family financially.[2] In this case, Mr. Enriquez was arrested by ICE in the early morning hours while he was in the car, driving his two younger children to daycare. At the time, he was working full-time as a landscaper, contributing meaningfully to his family's income. Mr. Enriquez paid taxes under his own name and Social Security number in 2014, 2015, and 2017 (although not in 2016, after he was most recently deported).[3]

The proposed conditions of release are onerous: Mr. Enriquez would live at his family's home, on electronic monitoring, with his wife as a third-party custodian. Most importantly, Mr. Enriquez and his wife Evelyn are willing to put up equity in their only asset as security that he will in fact appear as required in this matter. They understand the risks of doing so.

Mr. Enriquez also notes for the Court that he has a recent history of respecting court obligations: he was charged with a domestic assault in Framingham District Court in November 2017, and he has appeared in court as required on this matter.

---

[2] The government notes in its filing that Mr. Enriquez has used false names in the past. Mr. Enriquez informed undersigned counsel that, when he was arrested as a teenager, he provided false names to the police in an effort to avoid apprehension. He is now 33 years old and past those behaviors; he gave the agents his own name when arrested in this case and he was working under his own name at the time of his arrest.

[3] Mr. Enriquez's wife provided undersigned counsel with tax records from 2014, 2015, and 2017 indicating that Mr. Enriquez paid taxes under his own true name and Social Security number.

For the foregoing reasons, Mr. Enriquez respectfully urges the Court to release him under the proposed conditions as soon as possible.

        RESPECTFULLY SUBMITTED,

        BULMARO ENRIQUEZ
        By His Attorney,

        */s/ Jennifer C. Pucci*_____
        Jennifer C. Pucci
        BBO # 669823
        Federal Public Defender Office
        District of Massachusetts
        51 Sleeper Street, 5th Floor
        Boston, MA 02210
        Tel: 617-223-8061
        Email: Jennifer_Pucci@fd.org

<u>Certificate of Service</u>

I, Jennifer C. Pucci, hereby certify that this document was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF").

Date:   May 30, 2018                      */s/ Jennifer C. Pucci*
                                                     Jennifer C. Pucci